UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No. 1:22-cr-113 |
| v. | ) | |
| | ) | Judge Atchley |
| KEITH LUJUAN PETERSON. | ) | Magistrate Judge Steger |

## DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW,** Defendant, Keith Lujuan Peterson ("Mr. Peterson"), by and through counsel, pursuant to Federal Rule of Criminal Procedure 32, and hereby respectfully states as follows with regard to his sentencing.

## PRELIMINARY STATEMENT

Mr. Peterson has pled guilty to Count Two of his Indictment:

> Possession with intent to distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Doc. 34 Plea Agmnt ¶ 1; PageID#: 85. The other Counts (One, Three and Four) of the Indictment are to be dismissed pursuant to the Plea Agreement. *Id*. ¶2 PageID#: 85.

There is no minimum mandatory sentence for Mr. Peterson's crime of conviction. *See* 18 U.S.C. § 841(b)(1)(C). There is, however, a maximum sentence of twenty (20) years. *See id*.

Mr. Peterson's Preliminary Investigation Report ("PSR") filed by the United States Probation Office ("USPO") proposes a sentencing guideline range of 130 to 162 months. Doc. 42 PSR ¶ 113; PageID#: 176. Mr. Peterson has filed no objections to the PSR. Doc. 44 Notice of No Objections to PSR. Page ID#: 185. The government likewise has no objections to the PSR. Doc. 43 Notice of No Objections to PSR; PageID# 184.

Taking into consideration the particular circumstances of his case, Mr. Peterson and the government have entered into a Plea Agreement whereby both have agreed to a period of incarceration of sixty (60) months followed by a three-year term of supervised release pursuant to Fed. R. Crim. P. 11(c)(1)(C). Doc. 34 Plea Agmnt ¶ 6, PageID#: 87-88.

Mr. Peterson recognizes that the period of incarceration of sixty (60) months is significantly below the proposed guideline range in the PSR, but nevertheless respectfully seeks the Court's approval of this agreed-upon sentence for the reasons set forth below.

## BACKGROUND FACTS

In order to identify the precise issues underlying the Rule 11(c)(1)(C) agreement in this case, Mr. Peterson would respectfully direct the Court to his Motion to Suppress filed at Doc. 28 and the issues, authorities and arguments raised therein. In so doing, Mr. Peterson does not wish to suggest that his version of the facts and argument are not disputed by the government. To the contrary, the government filed a Response to Motion to Suppress at Doc. 30 wherein it alleges certain facts and argues that those facts weigh against suppression. For his part, Mr. Peterson disagrees with the reliability and veracity of the alleged facts and arguments set forth in the Government's response.

In an effort to not reiterate the briefs in their entirety here, the biggest source of disagreement revolves around the issues of (1) when and whether the arresting officer saw (or even could have physically seen) a small blue container found on Mr. Peterson's lap from the officer's particular vantage point; and (2) when and whether the arresting officer had reasonable suspicion sufficient to detain Mr. Peterson based upon his alleged view of the small blue container.

Suffice it to say that key facts upon which the resolution of these issues depends are

2

heavily disputed between the parties. The parties briefed these issues and intended to present argument and proof at an evidentiary hearing before the Magistrate Judge to support their positions.

Both parties recognized, however, that the resolution of these constitutional issues presented a substantial litigation risk for each party as resolution of the constitutional issues in favor of Mr. Peterson would have resulted in the suppression of all (or virtually all) evidence against Mr. Peterson in this matter. On the other hand, should the Court have decided the issues against Mr. Peterson, Mr. Peterson would potentially be facing a period of incarceration greater than sixty (60) months.

Given the substantial litigation risk to both Mr. Peterson and the government, the parties agreed to the proposed Rule 11(c)(1)(C) Plea Agreement currently before the Court and agreed to a factual basis that satisfies the offense elements for Count Two. The factual basis does not address the collateral facts (alleged by either side) underpinning the constitutional issues raised by Mr. Peterson in his motion to suppress. *See* Doc. 34 Plea Agmnt ¶ 4; PageID#:86-87. [1]

## LAW AND ARGUMENT

A. **The Court Should Approve the 60 Month Term of Incarceration Agreed Upon By Mr. Peterson and the Government.**

Mr. Peterson respectfully submits that the agreed-upon sentence is appropriate in light of the totality of the circumstances and the factors designated by 18 U.S.C. § 3553(a).

---

[1] Mr. Peterson has been cautious to reserve his right to re-raise and not waive these constitutional issues should the Court not approve the instant Rule 11(c)(1)(C) Plea Agreement proposed by the parties. In such a case, Mr. Peterson expects to withdraw his plea and proceed with his motion to suppress. However, he fully understands that he would be waiving those issues should the Court accept the proposed Plea Agreement as Mr. Peterson and the government have requested.

First, the litigation risk inherent in this case justifies the parties' agreement. Second, 18 U.S.C.§ 3553(a) directs the Court to consider the following factors in sentencing: (1) the nature and circumstance of the offense, (2) Mr. Peterson's history and characteristics, (3) the need for the sentence imposed to reflect the seriousness of the offense in order to promote respect for the law; (4) the need for the sentence to afford adequate deterrence to criminal conduct, (5) the need for the sentence imposed to protect the public from further crimes perpetrated by Mr. Peterson; (6) the need for the sentence imposed to provide Mr. Peterson with needed educational or vocational training, medical care or other treatment; and (7) the kinds of sentences available and the sentencing range. Mr. Peterson respectfully submits that the 3553(a) factors do not disallow the Court's downward variance to the sixty (60) months proposed by the parties.

With regard to the nature and circumstances of the offense, Mr. Peterson has admitted to possession with intent to distribute fentanyl. According to the PSR, Mr. Peterson was found to be in possession of a relatively small amount of methamphetamine mixture (10 grams) and fentanyl (5 grams) at the time of his arrest on April 15, 2022. Further, the PSR indicates that Mr. Peterson should be held accountable for an additional fifteen ounces (approximately 420 grams) of methamphetamine (mixture) of "ghost" or "phantom" weight based upon statements made to law enforcement.[2] And while the PSR indicates that a pistol was found in the vehicle near Mr. Peterson, there is no indication whatsoever that he brandished it or in any way acted threateningly or menacingly towards law enforcement. To the contrary, videotape of the arrest reveals a relatively low-key and friendly exchange between the arresting officer and Mr. Peterson. Mr. Peterson cooperated fully with authorities and answered questions both during his initial arrest and his later

---

[2] Mr. Peterson's Motion to Suppress sought exclusion of all of this purported evidence as fruit of the poisonous tree.

on-scene interview. Setting aside the issues that led to the afore-mentioned constitutional challenges and suppression issues, there is nothing terribly extraordinary about the circumstances of the offense.

When Mr. Peterson stands in front of the Court at his sentencing, the Court will undoubtedly see a very polite, soft-spoken and intelligent man who has struggled mightily due to his own addiction and has the criminal history reflective of an addict.

Mr. Peterson is thirty-seven (37) years of age. Doc. 42 PSR, p. 2; PageID#: 147. He is a father of three (3) minor children. *Id.* ¶ 103; PageID#: 174. Mr. Peterson was raised by his mother and father in an intact home. *Id.* ¶ 102; PageID#: 174. Mr. Peterson graduated from Central High School in 2003 and enrolled at Chattanooga State Community College in 2006. He has held employment prior to and since graduation from high school. He has had successful and relatively lengthy terms of employment with Absolute Lawns, Converges Call Center, Waffle House, Kendrick Cleaning and J.B. Hunt. *Id.* ¶ 110; PageID#: 175. He has family support in this area.

Since his incarceration and concomitant sobriety, Mr. Peterson has assisted significantly with his defense through extensive case research and analysis. He has been a very effective "legal assistant" throughout this process and has a remarkable skill set in this regard. He has great intellectual promise.

But, Mr. Peterson has a history of falling prey to addiction. He first started using marijuana in high school in 2001 but ceased using it in 2015. *Id.* ¶ 107; PageID#: 175 He used cocaine from 2005 to 2007. *Id.* He became addicted to prescription opiates in 2006 and used them until 2014. *Id.* This opiate addiction led him to use heroin from 2014 to 2019. *Id.*. Ultimately, he began using methamphetamine, and at the time of his arrest, he was using methamphetamine and fentanyl "almost daily." He has gotten clean since his arrest and wants to remain clean. To assist with his

5

sobriety, he respectfully asks the Court to refer him to the 500-hour Residential Drug Abuse Program (RDAP) during the term of his incarceration.

He is also desirous of additional vocational training and hopes to be placed in a Bureau of Prisons facility where he might be able to earn his OSHA tow motor certification – a skill he expects to be highly marketable in this area upon his release. With his particular skill set and intellect, his vocational opportunities are very broad.

In respect to promoting respect for the law and deterrence of criminal conduct, sixty (60) months is not an insignificant amount of time to be sentenced for the crime in issue. Certainly, the crime itself was serious, but respectfully, so is a sixty (60) month period of incarceration. Moreover, in respect to the specific time of incarceration, research has shown that the certainty of punishment for a criminal offense is a much more effective deterrent than the actual severity of the punishment. Valerie Wright, Ph.D., *Deterrence in Criminal Justice: Evaluating Certainty Versus Severity of Punishment,* The Sentencing Project, (Nov. 2010), available at http://www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf. In this case, Mr. Peterson was driven into his actions, in large if not complete part, by his own addictions and his concomitant drug-addled decision-making. In such cases, studies have concluded that it is unlikely "that such persons [under the influence of drugs] are deterred by either the certainty or severity of punishment because of their temporarily impaired capacity to consider the pros and cons of their actions." *Id.* Further, studies have also shown that lengthy terms of incarceration do not reduce rates of recidivism through the mechanism of general deterrence. *See* Anthony N. Doob and Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypotheses,* 30 Crime and Justice, 143, 187 (2003).

Under the totality of the circumstances, Mr. Peterson respectfully submits that a sentence of sixty (60) months, coupled with appropriate addiction counsel and vocational training, followed by three (3) years of supervised release is an appropriate sentence. In the end, the sentence more than adequately serves to promote respect for the law while also appropriately and fully considering the facts and circumstances of the crime to which Mr. Peterson has offered to plead guilty. Accordingly. Mr. Peterson respectfully asks that the Court approve the proposed sentence of sixty (60) months.

## **CONCLUSION**

In light of the foregoing, Mr. Peterson respectfully requests the following:

1. That the Court impose a sixty (60) month sentence of incarceration as a result of the guilty plea entered by Ms. Kazy, followed by a three year term of supervised release;

2. That the Court order that Mr. Peterson be enrolled in the 500 Hour RDAP Program; and

3. That the Court order and/or recommend that Mr. Peterson be sent to an appropriate BOP facility where he can receive additional educational and vocational training, including fork lift certification.

7

Respectfully submitted,

**EVANS HARRISON HACKETT PLLC**

By: /s/Timothy L. Mickel
Timothy L. Mickel (BPR No. 017486)
835 Georgia Avenue, Suite 800
Chattanooga, Tennessee 37402
Tele: 423.648.7890
Fax: 423.648.7897

*Attorneys for Defendant Keith Lujuan Peterson*

## CERTIFICATE OF SERVICE

I certify that on October 24, 2023, the foregoing document was served on all parties or through their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

**EVANS HARRISON HACKETT PLLC**

By: /s/Timothy L. Mickel